UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LARRY AND ETHEL ARMSTRONG | CIVIL ACTION NO. 04-2002 |
| VERSUS | U.S. DISTRICT JUDGE DEE D. DRELL |
| HERCULES INCORPORATED, et al | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment filed by defendant, Hercules Incorporated (Hercules), **Doc. #40**, referred to me by the district judge.

This is a suit for damages as a result of an on-the-job slip and fall accident which occurred on September 30, 2003. Plaintiff, Larry Armstrong (Armstrong) is a longtime employee of International Paper Company (IP) at its Pineville, Louisiana plant. During the course and scope of his employment, Armstrong slipped and fell in the "stock chest room" of the IP plant. It was determined that plaintiff slipped on polymer[1] which was on and near a floor drain grate. The substance is difficult to see and is known to be extremely slippery, especially when water is added or applied to it.

Plaintiff Armstrong sued Hercules, the seller of the polymer and Miller Transporters, Inc. (Miller) the common carrier which

---

[1] Polymer is a hydrocarbon based "plastic" material used in papermaking to bind the wood fibers during the manufacturing process. The polymer which is the subject of this suit was in a viscous, liquid form.

delivered the product to the IP mill and also sued Miller's employee, the driver of the delivery truck, Mark Andrews (Andrews), who spilled the polymer on which plaintiff slipped.

IP has a contract under which the polymer is purchased from Hercules. Hercules, in turn, has a contract with Miller under which Miller delivers the polymer to IP by placing it into tanks at the IP mill.

Hercules has filed this motion for summary judgment arguing that it breached no duty to the plaintiff and was thus not negligent and that it has no other legal responsibility to him.

## The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse

party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett,</u> 106 S.Ct. 2548 at 2552; <u>International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc</u>., 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. <u>Little v. Liquid Air Corporation</u>, 37 F.3d 1069, (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing

that there is a genuine issue for trial." <u>Izen v. Catalina</u> 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. <u>Little</u>, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. <u>Austin v. Will-Burt Company</u>, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. <u>Little</u>, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." <u>Celotex</u> at 2553.

## <u>Analysis</u>

On the day Miller's driver, Andrews, delivered the polymer to IP, one of two storage tanks into which the polymer was pumped overflowed. That area was "roped off" with warning tape and was eventually cleaned by a Hercules employee. On that same day,

4

unbeknownst to anyone until after Armstrong's accident eight days later, the driver, Andrews, upon completion of delivery of the polymer, improperly drained his delivery hose of remaining polymer into a floor drain in the "stock chest room", some 70 feet or so away from where the storage tanks stood.

In plaintiffs' complaint, Hercules is alleged to have been at fault both under principles of negligence and strict liability. The parties agree that whether negligence can be found in this case depends first on whether Hercules had a legal duty to the plaintiff. Under Louisiana's duty-risk analysis, a plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. <u>Hardy v. Bowie</u>, 744 So.2d 606 at 613 (La. 1999).

Hercules shows that it had no legal or contractual duty to plaintiff and that because, under its contract with IP, title to the polymer passed at delivery, it cannot be liable to plaintiff. Plaintiff points out first that Hercules owns the polymer tanks and is required, under the contract with IP, to maintain its equipment on IP's facility, including the piping which flows product from the storage tanks to smaller day tanks[2] and then to IP's paper

---

[2] At least one deponent referred to the larger storage tanks as "day tanks". It is apparent from the weight of the testimony that this nomenclature is incorrect. What the tanks are called is not important to us here.

5

processing machines. Plaintiff further points out that Hercules is required to provide constant service to IP on its equipment and manage inventory of polymer for IP. Hercules is responsible for system "maintenance and cleaning". Therefore, plaintiff argues, Hercules had a duty to refrain from creating a potential danger or to permit an unsafe condition to remain on the premises. In support of its argument, plaintiff shows that on September 22, the day of the delivery by Miller's Andrews, Hercules employee Bob Toovey was called to clean the area and that, after cleaning, Toovey removed the safety flagging which had "roped off" the area. Plaintiff says there was still significant polymer on the floor.

However, as Hercules points out in brief, the area where the overflow occurred at the two large storage tanks, and which Toovey cleaned and from which Toovey removed the warning tape, was <u>not</u> the area in which plaintiff slipped and fell. Rather, plaintiff fell eight days later, in the storage chest area some 70 feet or so away. As the evidence before the court shows, at the time Toovey cleaned the tank area of overflow, no one knew that Andrews had dumped polymer from his delivery hose into the drain grate in the storage chest room. Toovey did not clean or attempt to clean that area and did not remove safety warning tape from that area. In short, Hercules was unaware of a spill there. Indeed the evidence shows that it was IP personnel who attempted to clean the stock chest area and who removed safety tape there.

Further, and perhaps more important, is that plaintiff has pointed to no legal or contractual provision requiring Hercules to monitor IP's plant floors for slip hazards. Hercules employees, the evidence shows, would have had no business in the stock chest area and would have had no reason to monitor the floor there. Even the floor area at the storage tanks, where the overflow occurred, was not Hercules' responsibility, although Hercules' Toovey testified that, for customer relations, and because he knows how to handle polymer, he would have (and did) cleaned up polymer spills if asked to do so by IP.

Next plaintiff argues that under the Occupational Safety and Health Act of 1970, compliance with which was required by the Hercules-IP contract, Hercules had a duty to keep IP's floors clean. However, OSHA does not require a seller of goods to keep the floor of its customers clean and plaintiff has provided no evidence that such is required. OHSA provides that employers have a duty to their employees to provide a safe work environment. Hercules was not plaintiff's employer. Hercules did not undertake by contract to stand in IP's place with regard to workplace safety of IP's employees.

Next plaintiff argues that there remain genuine issues of material fact as to whether Hercules may be liable for the acts of Miller's driver, Andrews. Specifically, plaintiff submits that there are questions with regard to Hercules' right of operational

7

control over Miller's driver. A principal is not liable for the acts of its independent contractors unless (1) the liability arises from ultra-hazardous activities performed by the contractor on behalf of the principal or (2) the principal retained "operational control" over the contractor's work or expressly or impliedly approved its unsafe work practices. <u>Fruge v. Parker Drilling Company</u>, 337 F.3d 558 (5th Cir. 2003).

In this case, the contract between Miller and Hercules specifically provided that Miller was an independent contractor and provided that Miller would retain operational control. Plaintiff has provided no evidence to show that, in fact, Hercules retained any operational control. Indeed, as Hercules points out, it had no employees present during the delivery nor has plaintiff proven that it was required to by any contractual provision or otherwise. Amsden's e-mail, referred to by plaintiff, does not raise a genuine issue of fact.

Finally, plaintiff suggests that Hercules had the custody or "garde" of the polymer. In fact, title to the polymer passed at delivery under the contract. Further, Hercules certainly did not have custody or control of discarded polymer which had been poured into a floor drain by Miller's driver. See <u>King v. Louviere</u>, 543 So.2d 1327 (La. 1989).In addition, Hercules had no knowledge the polymer was in the stock chest area.

In summary, I find that there are no genuine issues of

8

material fact as to whether Hercules was negligent or otherwise legally responsible to plaintiffs and that Hercules is entitled to judgment as a matter law. For the foregoing reasons IT IS RECOMMENDED that Hercules' motion for summary judgment, **Doc. #40**, be GRANTED and that the claims against Hercules be dismissed.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 17th day of February, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE